```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x

  NICOLE TOZZI,

                    Plaintiff,                    MEMORANDUM & ORDER
                                                  24-CV-3741 (EK)(ST)
          -against-

  DALEVIEW CARE CENTER d/b/a MMR CARE
  CORP.; SYLVIA BLACKMON; and MICHAEL
  OSTREICHER,

                    Defendants.

-------------------------------------x
```

ERIC KOMITEE, United States District Judge:

        Plaintiff Nicole Tozzi worked as the Director of Social Services at Daleview Care Center. She alleges that Daleview and its leadership retaliated against her for complaining about unsafe patient care practices in violation of New York Labor Law Sections 740, 741, and 215. She also alleges that she was demoted (and constructively terminated) because she became pregnant.

        Tozzi asserts three claims under Title VII of the Civil Rights Act of 1964: for gender discrimination, pregnancy discrimination, and retaliation. She also brings analogous state-law claims, along with her Section 740, 741, and 215 claims and a state-law claim for unequal pay. Daleview now moves to dismiss Tozzi's unequal pay and Section 740, 741, and 215 claims. It does not seek to dismiss Tozzi's federal claims.

For the reasons outlined below, the motion to dismiss is granted in part.

## I.   Background

The Court draws the following facts from the complaint. They are presumed true for the purpose of this order. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

**A.   Tozzi Reports Allegedly Unsafe Practices**

Tozzi began work at Daleview in November 2020. Compl. ¶ 40, ECF No. 1. Daleview is a "senior care facility" in Farmingdale, New York. *Id.* ¶ 15. Tozzi's role "entailed listening to and effectively addressing patient and patient family grievances." *Id.* ¶ 51.

Shortly after she started work, Tozzi began receiving complaints from patients' families about unsafe patient practices at Daleview. *Id.* ¶ 52. The complaints concerned, among other things: (1) Daleview's practice of "double diapering" patients to minimize diaper changes; (2) employees' failure to address chronic bedsores; (3) employees' failure to maintain safe bed positions for tube-fed patients; (4) employees' refusals to instruct patients about their medications or care; and (5) delayed response times to patient alarms. *Id.* ¶¶ 54, 81. Tozzi observed some of these practices herself. *Id.* ¶ 54.

Tozzi informed her supervisor — defendant Blackmon — about these practices during her team's morning meeting. *Id.* ¶¶ 55-56. Blackmon responded by "abruptly cutting her off and dismissing her concerns." *Id.* ¶ 57. Tozzi also informed Daleview's director of nursing (who is not a party to this action) about these alleged practices, only for the director to respond that "[s]ocial working doesn't oversee nursing." *Id.* ¶¶ 58-59. Tozzi continued to protest the allegedly unsafe practices through at least December 2021. *Id.* ¶¶ 73, 80. At that time, Blackmon "warned [her] to keep her mouth shut" and said that if she did not like Daleview's practices, she could "use the door." *Id.* ¶¶ 83-84.

Tozzi also expressed concerns about Daleview's billing practices. In March 2022, Blackmon and the facility's owner (defendant Ostreicher) asked Tozzi to "'dumb down' the psychological test administered to patients to make it appear as though the patients were depressed." *Id.* ¶¶ 101, 104. This would, according to Tozzi, have allowed Daleview to "bill Medicare for services that patients did not even need." *Id.* ¶ 105. Tozzi refused, at which point Ostreicher became "increasingly cold and resentful towards her." *Id.* ¶¶ 106, 109.

**B.  Tozzi Becomes Pregnant**

When Tozzi initially interviewed with Daleview in November 2020, she told Blackmon that she was "single and [did

not] have any children." *Id.* ¶ 38. This statement left Blackmon "noticeably relieved." *Id.* ¶ 39. However, several months after joining, Tozzi told Blackmon that she planned to become pregnant via a sperm donor. *Id.* ¶ 60. She eventually became pregnant sometime in the fall of 2021. *Id.* ¶¶ 71, 73-74.

In January 2022, Tozzi learned that she was at risk of a pregnancy complication called vasa previa. *Id.* ¶ 85. So, she asked Blackmon to excuse her from "some of her physical job functions, like assisting patient transfers by pushing the wheelchairs." *Id*. ¶¶ 88. She also informed Blackmon that "her work might be somewhat impacted as she also could not be under stress or perform activities that raised her blood pressure." *Id.* ¶ 89. Blackmon agreed to the requested accommodations. *Id.* ¶ 91.

However, Tozzi alleges that shortly after Blackmon approved the work accommodations, she commenced a "campaign of retaliation" against Tozzi. *Id.* ¶ 91. This "campaign" included refusing to meet with Tozzi; "sarcastically call[ing] great attention" to Tozzi's pregnancy; inquiring about Tozzi's health in an "exaggerated, dramatic, and insincere tone"; "regularly touch[ing]" Tozzi's stomach; and "asking [Tozzi] what the big deal was" in response to questions about maternity leave. *Id.* ¶¶ 92-102. Tozzi alleges similarly unwelcome behavior by other Daleview employees. For example, she alleges that Blackmon's

4

assistant mimicked punching Tozzi's stomach and joked (within earshot of Blackmon) about pushing Tozzi down the stairs.  *Id.* ¶¶ 114-19.

### C. Tozzi Is Demoted and Eventually Resigns

On April 1, 2022, Blackmon told Tozzi that she would be demoted upon returning from maternity leave, and that her salary would be reduced one month after she returned from leave. *Id.* ¶¶ 120, 125.  Blackmon said that that Tozzi was an "excellent and smart [s]ocial [w]orker who fought for the residents," but that she would nevertheless return as a "Staff Social Worker" rather than the Director of Social Services.  *Id.* ¶¶ 123-24.  Blackmon also told Tozzi that she "could be telling [her she was] fired," but had opted for demotion instead.  *Id.* ¶ 124.  When Tozzi asked why she was being demoted, Blackmon said Tozzi had made several unnamed coworkers feel "uncomfortable."  *Id.* ¶ 128.

Blackmon provided a more detailed explanation in a May 26 follow-up email to Tozzi.  *Id.* ¶ 132.  There, she wrote that Tozzi's discussion of "personal and private business in the workplace was . . . unprofessional."  *Id.*  She added that there were "several reasons" for Tozzi's demotion, including "family complaints, staff complaints, resident complaints, and the fact that [Blackmon had] had to speak to [Tozzi] too many times regarding [her] work performance."  *Id.*  She closed by remarking

5

that Tozzi was a "good [s]ocial [w]orker just not the right fit for the [Social Work] Director position at Daleview." *Id.* Tozzi alleges that — by retroactively adding to her explanation for Tozzi's demotion — Blackmon was "trying to cover her tracks." *Id.* ¶ 133.

Tozzi received a letter confirming her demotion on August 18, 2022. *Id.* ¶ 135. She resigned roughly one month later, *id.* ¶ 136, and filed this action on May 23, 2024.

## II. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[1] The plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Instead, the facts pleaded must "be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is not sufficient. *Iqbal*, 556 U.S. at 678.

## III. Discussion

The defendants move to dismiss four of Tozzi's New York Labor Law claims. These are her retaliation claims under

---

[1] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

6

Sections 740, 741, and 215 of that law, as well as her pay-discrimination claim under the New York Equal Pay Act (codified at Section 194 of the Labor Law).  We address each of those claims in turn.

**A.   The Section 740 Claim**

Section 740 provides that "[a]n employer shall not take any retaliatory action against an employee" who "discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that the employee reasonably believes is in violation of law, rule or regulation or that the employee reasonably believes poses a substantial and specific danger to the public health or safety."  N.Y. Lab. Law § 740(2)(a).  As relevant here, a plaintiff bringing such a claim must allege facts in support of three elements: (1) that she disclosed or threatened to disclose to her supervisor; (2) a policy or practice she reasonably believed posed a "substantial and specific danger to the public health or safety"; and (3) that she suffered an adverse employment action as a result.  *Id.*; *Duarte v. St. Barnabas Hosp.*, 265 F. Supp. 3d 325, 353-54 (S.D.N.Y. 2017).  Any such claim must be brought within two years of the adverse employment action.  N.Y. Lab. Law § 740(4)(a).

7

1.  <u>Tozzi's Section 740 Claim Is Timely</u>

Daleview first argues that Tozzi's Section 740 claim is time-barred, because she has not plausibly alleged an adverse employment action that occurred within two years of the filing of this action. *E.g.*, *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 798 n.12 (2d Cir. 2014) ("[A] statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint."). Tozzi responds that her demotion and her "constructive termination" both render the Section 740 claim timely. Pl.'s Br. in Opp'n 4, ECF No. 16.[2] Tozzi is right, but only as to the alleged constructive discharge.

We start with the demotion. A demotion accompanied by a reduced salary is an adverse employment action. *E.g.*, *Lefort v. Kingsbrook Jewish Med. Ctr.*, 203 A.D.3d 708, 710 (App. Div. 2d Dep't 2022). Importantly, though, a Section 740 claim based on a demotion accrues when the employer *notifies* the defendant about the demotion, not when the demotion *happens*. *See Queensborough Comm. Coll. v. State Human Rights App. Bd.*, 363 N.E.2d 349, 350 (N.Y. 1977) ("The act of giving complainant

---

[2] Tozzi does not appear to argue in her brief that any other workplace incidents — such as her personality conflicts with Blackmon — amount to adverse employment actions. Nor could she, given that that "[e]veryday workplace grievances, disappointments, and setbacks do not constitute adverse employment actions." *LaGrande v. DeCrescente Distrib. Co.*, 370 F. App'x 206, 211 (2d Cir. 2010). The same goes for "verbal abuse" and "negative or otherwise insulting statements." *Scott v. City of N.Y. Dep't of Correction*, 641 F. Supp. 2d 211, 231 (S.D.N.Y. 2009) (collecting cases).

notice that she would not be reappointed gave rise immediately to a cause of action . . . and therefore started the running of the limitation period."); *Dykstra v. Wyeth Pharms., Inc.*, 454 F. App'x 20, 22-23 (2d Cir. 2012) (applying *Queensborough* to a Section 740 claim). Here, Blackmon notified Tozzi about her demotion on April 1, 2022 — more than two years before Tozzi filed this action. Compl. ¶ 120. Accordingly, a Section 740 claim based on Tozzi's demotion is time-barred.

The constructive discharge allegation, in contrast, survives. To plausibly allege constructive discharge, the plaintiff must allege that the defendant "intentionally" created working conditions "so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Serricchio v. Wachovia Sec. LLC*, 658 F.3d 169, 185 (2d Cir. 2011). A demotion, "particularly one that is accompanied by a significant loss of salary, prestige or responsibilities," can give rise to a plausible allegation of constructive discharge. *Bright-Asante v. Saks & Co.*, 242 F. Supp. 3d 229, 243 (S.D.N.Y. 2017); *see also Penn. State Police v. Suders*, 542 U.S. 129, 134 (2004) (plaintiff may claim constructive discharge based on "employer-sanctioned adverse action officially changing her employment status or situation," including a "humiliating demotion"). Here, Tozzi alleges that she was demoted from supervising all social workers at Daleview to working as a staff

9

social worker, that the demotion came with a loss of pay, and that Blackmon impliedly threatened to fire her if she did not accept the demotion. Compl. ¶¶ 120, 124-25, 132, 135. That is enough to plausibly allege constructive discharge at this stage.

Because Tozzi has plausibly alleged constructive discharge, the Section 740 claim is timely. A retaliation claim based on constructive discharge accrues when the employee notifies her employer that she intends to resign. *Green v. Brennan*, 578 U.S. 547, 563 (2016); *see also Flaherty v. Metromail Corp.*, 235 F.3d 133, 138 (2d Cir. 2000) ("We think that the date Flaherty's claim accrued was the date when she gave definite notice of her intention to retire, and the rule should be the same in all cases of constructive discharge."); *Kornmann v. City of N.Y. Bus. Integrity Comm'n*, 467 F. Supp. 3d 54, 60 (E.D.N.Y. 2020) ("[W]hen the adverse employment action is a constructive discharge, the employee holds the key to when his claim accrues . . . ."). Tozzi told Daleview she would resign on September 20, 2022, around twenty months before filing this action. Compl. ¶ 136. Thus, her Section 740 claim is timely.

2. Tozzi Plausibly Alleges a Section 740 Claim

a. Tozzi Plausibly Reported Threats to Public Safety

On the merits, Daleview argues that Tozzi did not disclose to Daleview any practices that she "reasonably believe[d] pose[d] a substantial and specific danger to the

10

public health or safety." N.Y. Lab. Law § 740(2)(a). This argument has two bases. First, Daleview suggests that Tozzi lacked first-hand knowledge about the challenged practices, and therefore cannot have reasonably believed that they threatened public safety. Second, Daleview asserts that the challenged practices only affected individual patients, not the public at large.

The first argument fails on both the law and the alleged facts. Section 740 does not require first-hand knowledge about the challenged practices. *Rodgers v. Lenox Hill Hosp.*, 211 A.D.2d 248, 251-52 (App. Div. 1st Dep't 1995). And in any event, Tozzi alleges that she observed some of the challenged practices. Compl. ¶ 54.

The second argument is also unavailing. Daleview is right that, to fall within the scope of Section 740, a challenged practice must threaten the safety of the "public at large." *See Kern v. DePaul Mental Health Servs., Inc.*, 152 A.D.2d 957, 958 (App. Div. 4th Dep't 1989). But a plaintiff need not allege that the challenged misconduct was a "large-scale threat" with "multiple potential or actual victims." *Villarin v. Rabbi Haskel Lookstein Sch.*, 96 A.D.3d 1, 7 (App. Div. 1st Dep't 2012). Even where the plaintiff alleges "only one mishap," alleged misconduct is cognizable under Section 740 if it represents an "inherently dangerous practice" that "might

11

recur" in the future.  *Id.* at 6-8; *see also Rodgers*, 211 A.D.2d at 253.

Here, Tozzi alleges that Daleview employees consistently failed to address bedsores or to maintain tube-fed patients in appropriate positions.  *E.g.*, Compl. ¶ 54.  In other words, she alleges patterns of "inherently dangerous" behavior that could conceivably affect other patients in the future.  So, she has sufficiently alleged that she challenged practices within the ambit of Section 740.[3]

b.   Tozzi Plausibly Alleges Causation

Daleview finally argues that Tozzi has not plausibly alleged a causal connection between her complaints about Daleview's workplace practices and any adverse employment action.  The Court disagrees.

A Section 740 plaintiff must allege a "causal connection" between the disclosure of unsafe practices and the adverse employment action. *Klein v. Brookhaven Health Care Facility*, No. 23-CV-7771, 2024 WL 5074485, at *2 (2d Cir. Dec. 11, 2024), *cert. denied*, 145 S. Ct. 1971 (2025).  The plaintiff

---

[3] Though the parties do not press this issue in their briefing, Section 740 also prohibits retaliation based on an employee's refusal to participate in an activity or practice that threatens public safety.  N.Y. Lab. Law § 740(c).  Tozzi appears to allege that she was retaliated against for declining to participate in a Medicare fraud scheme.  Compl. ¶¶ 104-08.  However, Tozzi's refusal to participate in the alleged fraud cannot form the basis of a Section 740 retaliation claim, because New York courts have consistently held that a healthcare provider's "financial wrongdoing" does not threaten public safety within the meaning of that statute.  *See Duarte*, 265 F. Supp. 3d at 355 (collecting cases).

12

may allege such a connection "indirectly . . . by showing that the protected activity was closely followed in time by the adverse employment action." *Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cnty.*, 252 F.3d 545, 554 (2d Cir. 2001); *see also Rackley v. Contellis, LLC*, No. 22-CV-4066, 2024 WL 3498718, at *31 (S.D.N.Y. June 17, 2024) (applying this rule in the Section 740 context and collecting similar cases).

Tozzi has sufficiently alleged a causal connection here. She complained about Daleview's practices until at least December 2021. Compl. ¶¶ 73, 80; *see also id.* ¶¶ 55 (Tozzi "regularly objected" to Daleview's care practices). And she was notified of her demotion and pay cut — the events that triggered her alleged constructive discharge, *see* Compl. ¶ 136 — in April 2024. *Id.* ¶ 120. That is a four-month gap. Both federal and New York courts have held that a four-month gap between protected activity and adverse employment action can be sufficient to plead causation. *See, e.g.*, *Summa v. Hofstra Univ.*, 708 F.3d 115, 128 (2d Cir. 2013); *Herskowitz v. State*, 222 A.D.3d 587, 588 (1st Dep't 2023).[4]

---

[4] The fact that Tozzi had lodged regular complaints, seemingly without any retaliation by Daleview, does not change the outcome here. It is plausible that Daleview simply waited for an "opportune time" — namely, Tozzi's impending departure for maternity leave — to "exact their retaliation" and reshuffle the leadership of her team. *See Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009); *see also Carmody v. New York Univ.*, No. 21-CV-8186, 2023 WL 5803432, at *8 (S.D.N.Y. Sept. 7, 2023) (justifying denial of summary judgment on Title VII retaliation claim by noting that the plaintiff's "long-running" complaints did not "prevent a causal inference").

13

**B.     The Section 741 Claim**

To state a retaliation claim under Section 741, a plaintiff must allege (1) that they are a health care "employee"; (2) that they disclosed or threatened to disclose an activity, policy, or practice; and (3) that they reasonably believed the activity, policy, or practice constituted "improper quality of patient care."  *Reddington v. Staten Island Univ. Hosp.*, 893 N.E.2d 120, 89-90 (N.Y. 2008); *see also* N.Y. Lab. Law § 741(2).

Tozzi does not plausibly allege that she was the type of employee covered by Section 741.  "[T]o be subject to the special protections of [S]ection 741, an employee of a health care provider must perform health care services, which means to actually supply health care services, not merely to coordinate with those who do."  *Reddington*, 893 N.E.2d at 91.  The complaint states only that Tozzi "listen[ed] to and effectively address[ed] patient and patient family grievances."  *Id.* ¶ 51.  The complaint contains no allegation suggesting that Tozzi provided those services herself.  If anything, it implies otherwise: Tozzi alleges that she responded to patient complaints by "recommend[ing]" — not implementing — "solutions to provide better care to . . . residents."  *Id.* ¶ 56.  And it offers specific examples of this dynamic.  When faced with complaints about medical care, Tozzi raised them with the

14

director of nursing rather than ameliorating them herself.  *Id.* ¶¶ 58-59.  The director then "reminded" Tozzi that the Director of Social Services did not "oversee nursing."  I*d.* ¶ 59.

In sum, the complaint suggests that Tozzi's role was to "coordinate with" employees who supplied medical care, not to provide such care.  Her Section 741 claim therefore must fail.  *Reddington*, 893 N.E.2d at 91.

C.   **The Section 215 Claim**

To state a Section 215 retaliation claim, a plaintiff must allege (1) that she complained to her employer; (2) about conduct that she reasonably believed violated the New York Labor Law or any order issued thereunder; and (3) suffered an adverse employment action as a result.  N.Y. Lab. Law § 215; *see also Kelly v. Xerox Corp.*, 256 A.D.2d 311, 312 (App. Div. 2d Dep't 1998).

Tozzi has not stated a Section 215 claim, because she does not allege a complaint falling within the scope of that statute.  Tozzi argues that she complained to Daleview about potential violations of Sections 740 and 741 of the New York Labor Law.  Pl.'s Br. in Opp'n 12.  But as detailed above, Sections 740 and 741 prohibit retaliation by employers.  Thus, Tozzi could only have reasonably believed that those provisions had been violated *after* the alleged retaliation had occurred.  *Cf. Dinis v. New York City Dep't of Educ.*, No. 22-CV-7741, 2024

15

WL 1208912, at *3 (S.D.N.Y. Mar. 21, 2024) ("It is axiomatic that a retaliation claim cannot be based on an adverse action taken before the protected activity."). That means that the earliest she could have complained about a violation of those provisions was in April 2022, when she learned about her impending demotion. Compl. ¶ 120. And nothing in the complaint suggests that Tozzi objected to her demotion as retaliatory at any point between April 2022 (when she learned about it) and September 2022 (when she quit). So, the Section 215 claim must be dismissed.

**D.   The Equal Pay Act Claim**

To state a claim under the New York Equal Pay Act, a plaintiff must allege that (1) "the employer pays different wages to employees [outside the employee's protected class]"; (2) "the employees perform equal work on jobs requiring equal skill, effort, and responsibility"; and (3) "the jobs are performed under similar working conditions." *Ryduchowski v. Port Auth. of New York & New Jersey*, 203 F.3d 135, 142 (2d Cir. 2000); *see also Rose v. Goldman, Sachs & Co., Inc.*, 163 F. Supp. 2d 238, 243 (S.D.N.Y. 2001) (state and federal equal-pay claims are evaluated under the same standard).

Tozzi fails to state a claim under the Equal Pay Act, because she does not allege that Daleview paid different wages to non-pregnant employees who performed "equal work on jobs

16

requiring equal skill, effort, and responsibility." While she alleges that Daleview never demoted or reduced the pay of "non-pregnant co-workers who had not complained about unsafe / unlawful employment practices," Compl. ¶ 126, her complaint says nothing about the skills or responsibilities of those non-pregnant coworkers.  And an Equal Pay Act claim is only plausible if the plaintiff alleges "that the [comparator] employees' *job content* was substantially equal." *E.E.O.C. v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254-55 (2d Cir. 2014). Because Tozzi has not done so here, her Equal Pay Act claim is dismissed.

## IV.  Conclusion

For the foregoing reasons, the motion to dismiss is granted in part and denied in part.  Tozzi's claim under Section 740 may proceed.  The Section 741, Section 215, and Equal Pay Act claims are dismissed without prejudice.

SO ORDERED.

                                                                            /s/ Eric Komitee
                                                                     ERIC KOMITEE
                                                                     United States District Judge

Dated:     January 27, 2026
           Brooklyn, New York